UNITED STATES of America
v.
ONE BALLY SUN VALLEY PINBALL
MACHINE et al.

UNITED STATES of America
v.
ONE BALLY LAGUNA BEACH PIN-
BALL MACHINE et al.

UNITED STATES of America
v.
ONE BALLY VENICE PINBALL
MACHINE et al.

UNITED STATES of America
v.
ONE BALLY CARNIVAL QUEEN PIN-
BALL MACHINE et al.

UNITED STATES of America
v.
ONE BALLY ORIENT PINBALL
MACHINE et al.

UNITED STATES of America
v.
ONE BALLY COUNTY FAIR PINBALL
MACHINE et al.

Civ. A. Nos. 16941, 16959–16963.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

March 28, 1972.

Donald E. Walter, U. S. Atty., L. Edwin Greer, Asst. U. S. Atty., Shreveport, La., for the United States.

Reule P. Bourque, Lafayette, La., for all defendants.

EDWIN F. HUNTER, Judge:

The government has petitioned for a new trial or modification of judgment. It is accurately alleged that the court erroneously found that intervenor had no previous knowledge that the taxes had not been paid upon the due dates. There is really no serious factual dispute in these cases and we appreciate that in this type of case the record should be as clear as possible factually in order to obtain a Fifth Circuit ruling squarely on the law.

We have filed an amended opinion herewith eliminating the finding complained of. A review of the record does reveal that in most instances intervenor did know at the time of seizure that the operator had not applied for his license. It was anticipated by intervenor that the operator would wait until he accumulated the money and then pay the penalty.

We agree with the government's appraisal of the Louisiana law and that as a result intervenor's contention that payment would violate his privilege against self-incrimination is totally without merit. But, because the operation of pinball machines, per se, is not

illegal in Louisiana, the language of United States v. Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434, continues to haunt us:

"When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise," 401 U.S. 715 at 721, 91 S. Ct. 1041 at 1045,

and makes it difficult to reconcile forfeiture with "due process" under the facts of these cases.

The motion for a new trial is denied.

## AMENDED OPINION

The United States seized 17 pinball machines located on premises of retail establishments for nonpayment of the federal tax due by the owners of the establishments on coin-operated gaming devices. The seizure was made without any prior notification to the owners that the tax was due, or that seizure would be the penalty for nonpayment.[1] The United States now seeks to forfeit the machines for nonpayment of the tax.

The owners complain that payment of the tax would violate their privilege against self-incrimination because such payment would constitute admission of a crime under state law. Additionally, they contend that the seizure, without prior warning or hearing, violates their constitutional right to due process of law. The first contention appears to be without merit; the second is based on firm ground.

The litigants agree that the Louisiana Gambling Device Confiscation Statute expressly excludes "pin ball games" from its operation. The government position as stated in its brief is: "26 U.S.C.A. § 4461[2] imposes a valid tax on an activity which is both legal and expressly permitted in the State of Louisiana and compliance would not in any way place claimants in danger of prosecu-

1. All taxes due were paid promptly after seizure.

2. The $250 tax.

tion." [3] We agree with the government's appraisal of the Louisiana law. That, coupled with the language of United States v. Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434, makes it difficult to reconcile forfeiture with "due process" under the facts of these cases:

> "When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." 401 U.S. 715 at 721, 91 S. Ct. 1041 at 1045.

The facts are:

1. The seventeen coin-operated devices which are the subject matter are gaming devices within the meaning of the federal statute so as to require the payment of a special tax of $250.00 on each, pursuant to 26 U.S.C.A. § 4461(a)(2).

2. Intervenors are the owners of all the machines. They were not personally liable for the tax imposed. The tax was levied not on the owner, but on the "person who maintains for use or permits the use of, on any place or premises occupied by him."

3. The persons who carried on the business located on the premises described in Actions 16,959, 16,960, 16,961, 16,962 and 16,963 were R. C. Van Hoosen, Henry Boutte, Alice Allemand, James Benoit and Mrs. Leroy Michoud.[4]

4. Seizures of the machines were effectuated in October 13, 1970. When intervenor became aware of the seizure it contacted Mr. Clifford A. Broussard, Internal Revenue Officer of Lafayette (since 1948), prepared the proper 11–B forms, and paid all taxes due.

5. Intervenor had no previous knowledge of any forfeiture provisions for non-payment. Prior to 1958 the forfeiture provisions were inapplicable to them and U. S. Treasury Department Form B, Revised February, 1967, made no mention of forfeiture.

6. For many years the Internal Revenue people in Lafayette, Louisiana accepted belated payments and no mention was made of forfeiture. Mr. Broussard himself was not aware of the fact that forfeiture could be instituted. (Tr. 41).

7. For several years, intervenor had paid and/or made certain that others paid the taxes due and no effort was ever made to evade.

### "SELF-INCRIMINATION"

Intervenor endeavors to bring himself within the rule of Marchetti v. United States, 390 U.S. 39, 88 .S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906; Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923; and Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, by asserting that the forfeiture is violative of his Fifth Amendment privilege against self-incrimination. The position is untenable for two reasons. First, to prevent the danger of self-incrimination in states where this activity may not be condoned by law, Congress has removed the provisions of federal law that might have resulted in self-incrimination. The Secretary of the Treasury and the Internal Revenue Service are no longer authorized to offer for public inspection a list of the names of the persons paying the tax. The requirement of conspicuous display has been repealed. Second, the litigants agree that the Louisiana Gambling Device Confiscation Statute, LSA–R.S. 15:31 expressly excludes "pinball games" from its operation. The state could successfully prosecute under

---

3. "Slot" machines (as distinguished from pinball machines) have been illegal in Louisiana for many years, although two decades ago the state found itself in the untenable position of levying and collecting a state tax on these illegal machines. A successful prosecution of a pinball opera-

tion would require proof that actual payoffs were made in violation of the state gambling statute, LSA–R.S. 14:90.

4. In Suit No. 16,959 a partner of the intervening partnership operated the premises.

Louisiana law only if the possessor or owner was engaged in a gambling operation, which in practice means proving actual payoffs. The Government insists that 26 U.S.C.A. § 4461 imposes a valid tax on an activity which is both legal and expressly permitted in Louisiana. We agree with its appraisal of the Louisiana Law. Intervenor's contention that payment of the tax would violate their privilege against self-incrimination because such payment would constitute admission of a crime under state law is totally without merit.

## "DUE PROCESS"

Prior to United States v. Coin and Currency (April, 1971) no doubt as to validity of the forfeiture proceedings, even against innocent owners, existed. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L. Ed. 376 (1921). Owners of chattels lost consistently, Voglino v. United States, 253 F.2d 794 (4th Cir., 1958); United States v. One Bally County Fair Pinball Machine (W.D.La., 1965), 238 F.Supp. 362.

The cases citing United States v. Coin and Currency reported to date offer little guidance. A number of per curiam reversals speaking in broad language state categorically that the statutory forfeiture proceeding, 26 U.S.C.A. § 7302, is constitutionally impermissible. United States v. One Philco Television (5th Cir., 1971), 443 F.2d 369; United States v. One Olivetti-Underwood Electric Adding Machine (5th Cir., 1971), 443 F.2d 372. Further discussion is found in several recent cases. Cole v. Cardoza (6th Cir., 1971), 441 F.2d 1337, 1340. The taxpayer challenged the constitutionality of the wagering excise tax. While holding the tax constitutional, the Court stated: ·

> [United States v. Coin & Currency] merely held that the forfeiture provisions of Section 7302 of the Internal Revenue Code violated the self-incrimination clause of the Fifth Amend-

ment. Urban v. United States, 5th Cir., 1971, 445 F.2d 641, 643.

These cases illustrate sharply the changing attitude toward what was once a routine procedure.

In United States v. One Lot of Eighteen Firearms (D.C.N.H., 1971), 325 F. Supp. 1326, a court examined closely the Supreme Court decision. The facts are interesting. Briand purchased a firearm from a sports shop. In doing so, he signed an Internal Revenue form certifying that he was not a felon. Twenty-five years earlier Briand, then 20 years old, had plead guilty to a charge of abetting another in the willful destruction of a car to defraud an insurer. Consequently, he was charged with violating a statute by knowingly making a false statement on the Internal Revenue form to a licensed firearms dealer. After a lengthy hearing before the United States Commissioner, the criminal charge was dismissed, but an action asking for forfeiture of the weapon was commenced under 18 U.S.C.A. § 924(d). Subsequently, the Governor granted a full pardon for the 1944 offense. The Court compared the firearms forfeiture statute with that found in the Internal Revenue laws, 26 U.S.C.A. § 7302. Basing its decision on United States v. Coin and Currency, it observed that forfeiture was a penalty which the pardon was granted to prevent:

> "Requiring forfeiture under these facts would not only be unjust, but would also raise serious constitutional questions of due process." Eighteen Firearms, supra at 1329, 1330.

A Sixth Circuit decision [5] gives guidance. It involved a forfeiture similar to that in Eighteen Firearms, supra. In 1947 McKeehan gave three machine guns to a long time friend. He and the donee had an understanding that if ever McKeehan acquired a gun room, the machine guns would be returned. The guns remained stored and forgotten until the Spring of 1969. During the in-

5. McKeehan v. United States (6th Cir., 1971), 438 F.2d 739.

terval a gun law was passed requiring registration of such weapons with the amnesty period for registration between November 2, 1968 and December 1, 1968. If the guns had been declared during that time, possession would have been determined to be lawful. In June, 1969, McKeehan surrendered the machine guns to the U. S. Treasury Department. Shortly thereafter he was charged with a criminal violation and a forfeiture proceeding was instituted. Both were to be tried together. On the date of trial the United States on its own motion dismissed with full prejudice its criminal indictment. It pursued the forfeiture. The Sixth Circuit held that the machine guns possessed by intervenor were lawfully imported; they were not instrumentalities of crime; that forfeiture was not justified by a congressionally declared purpose; that intervenors were not engaged in any activity with intent to defraud; and that imposition of forfeiture constituted an unconstitutional deprivation of property.

The intervenor in instant cases is not comforted by being told the proceeding is "in rem." He insists that there was no intent to use the machines in violation of the Internal Revenue laws, in that he had no intent to evade the payment of the tax. The statutory provision under which forfeiture is sought, 26 U.S.C.A. § 7302, reads:

> "It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property."

We simply cannot believe that the broad language of § 7302 can be used by the government to seize and destroy machines on which the tax has been paid, albeit late, when the machines are perfectly legal in Louisiana. But, prior jurisprudence approves presumptive fiction as a substitute for operative fact and this background cannot be ignored. The old cases hold that even though the owner had no intention of violating the law and misunderstood its purpose and effect, the property would nevertheless be subject to seizure and forfeiture (United States v. Five (5) Coin-Operated Gaming Devices, D. C., 154 F.Supp. 731, aff'd Voglino v. United States, 253 F.2d 794, cert. denied 357 U.S. 919, 78 S.Ct. 1359, 2 L.Ed.2d 1364; United States v. Five (5) Coin-Operated Gaming Devices, D. C., 246 F.Supp. 349). The rationale is that Section 4901(a) [6] clearly provides that no person shall be engaged in or carry on any trade or business subject to the tax imposed by 4461(a) (1) until he has paid the special tax. The reasoning is exemplified by this language:

> Sec. 7302 begins: "It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property." The word "intended" in that sentence does not refer to an intention to evade the tax, but to the use to which the machines are to be put, if they have not already been so used. If a machine is intended to be used for gaming purposes, and the operator of the business has not paid the tax, it may be seized and forfeited, even though the government may not be able to prove that the particular machine has been so used. The operator's intention with respect to paying the tax is immaterial; the question is whether he has paid it. 154 F.Supp. at 734.

The Government insists that remission of forfeitures of this kind is within the sole, exclusive and discretionary

---

6. § 4901. Payment of tax

 (a) Condition precedent to carrying on certain business.—No person shall be engaged in or carry on any trade or business subject to the tax imposed by section 4411 (wagering) or 4461(a) (1) (coin-operated gambling devices) until he has paid the special tax therefor. As amended Oct. 27, 1970, Pub.L. 91–513, Title III, § 1102(a), 84 Stat. 1292.

power of the Secretary of the Treasury. See 19 U.S.C.A. § 1618, 26 U.S.C.A. § 7327. United States v. One 1951 Cadillac Coupe, 108 F.Supp. 286 (W.D.Pa. 1952); United States v. Five (5) Coin-Operated Gaming Devices, 246 F.Supp. 349 (W.D.Va.1965). In our judgment, the Supreme Court in United States v. Coin and Currency, 401 U.S. 715, 91 S. Ct. 1041, 28 L.Ed.2d 434, has, in a less extreme situation, nullified these decisions and affirmatively approved of court intervention when petitioners' protests go unheeded. The pertinent language reads:

> We need not pursue that inquiry once again, however, because we think that the Government's argument fails on another score. For the broad language of § 7302 cannot be understood without considering the terms of the other statutes which regulate forfeiture proceedings. An express statutory provision permits the innocent owner to prove to the Secretary of the Treasury that the "forfeiture was incurred without willful negligence or without any intention on the part of the petitioner * * * to violate the law * * *." 19 U.S.C. § 1618. Upon this showing, the Secretary is authorized to return the seized property "upon such terms and conditions as he deems reasonable and just." It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent petitioner's protests have gone unheeded. United States v. Edwards, 368 F.2d 722 (CA4 1966); Cotonificio Bustese, S. A. v. Morgenthau, 74 App.D.C. 13, 121 F.2d 884 (1941) (Rutledge, J.).

Our conclusion is that the broad language of § 7302, when implemented by the presumption of § 4901, raises serious constitutional questions under that portion of the Fifth Amendment which commands that no person shall be "deprived of * * * property, without due process of law." Express statutory provisions permit the innocent owner to prove to the Secretary of the Treasury that the "forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law." 19 U.S.C.A. § 1618; 26 U.S.C.A. 7327. Here the facts authorizing remission are undisputed.

■ We are fully cognizant that chattels are not entitled to constitutional due process. However, these machines cannot be termed "contraband" subject to forfeiture as are illegal narcotics, United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; or untaxed whiskey, Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663. In short, the machines are not illegal in rem. They become illegal only because the tax was not paid promptly. We are not unsympathetic with the necessary prerogatives of government, but forfeiture provisions are, except in "contraband" situation, intended for the protection of revenue.

## CONCLUSION

■ The Supreme Court decision in United States v. Coin and Currency constitutes a construction of the Fifth Amendment contrary to past interpretations of that amendment and has the effect of barring forfeiture where the seizure was made without prior notification to the owners that the tax was due, or that seizure would be the penalty for nonpayment, and where the tax had been paid, albeit late, when, as here, the machines were not, per se, illegal in Louisiana.

The Secretary of the Treasury is authorized to return the seized property "upon such terms and conditions as he deems reasonable and just." 19 U.S.C. A. § 1618, 26 U.S.C.A. § 7327. Intervenor has thirty (30) days from this date to petition the Secretary for relief. If petitioner's protests go unheeded, it may

once again seek court intervention.[7]
United States v. Edwards, 368 F.2d 722;
United States v. Coin and Currency, 401
U.S. 715 at 721, 91 S.Ct. 1041, 28 L.Ed.
2d 434.

7. "As to the constitutional questions under that portion of the Fifth Amendment which commands that no person shall be 'deprived of * * * property, without due process of law; nor shall private property be taken * * * without just compensation." United States v. Coin and Currency, 401 U.S. 715, at 720, 91 S.Ct. 1041, at 1044, 28 L.Ed.2d 434.