**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**VARIOUS GAMBLING DEVICES,
Defendants,**

**A. B. Fort, Claimant-Appellant.**

No. 72–2359.

United States Court of Appeals,
Fifth Circuit.

April 12, 1973.

See also, D.C., 340 F.Supp. 1200.

Hunter M. Gholson, Ralph E. Rood, Columbus, Miss., for claimant-appellant.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Asst. U. S. Atty., Oxford, Miss., Michael Carnes, Dept. of Justice, Paul G. Kratzig, New Orleans Organized Crime Strike Force, U. S. Dept. of Justice, New Orleans, La., for plaintiff-appellee.

Before GEWIN, SIMPSON and RO-NEY, Circuit Judges.

RONEY, Circuit Judge:

Claimant A. B. Fort appeals from a judgment forfeiting to the Government thirty-one pinball machines as gambling devices possessed by claimant in 1970 and 1971, when he was not registered under the Gambling Devices Act of 1962. 15 U.S.C.A. §§ 1171–1178.

Claimant's specifications of error present three issues for review: (1) Was the forfeiture of the machines consistent with the Due Process guarantee of the Fifth Amendment to the Constitution? (2) Were the ten machines manufactured prior to the effective date of the Gambling Devices Act of 1962 subject to forfeiture under the terms of the Act? (3) Were the several machines found at claimant's warehouse lawfully seized in the execution of a valid search warrant? We affirm.

The Gambling Devices Act of 1962 makes it unlawful for a person to engage in a business in which he buys or receives any "gambling device" [1] which he knows to have been transported in interstate commerce after the effective date of the Act, unless the person has registered with the Attorney General.[2] Every person required to register must keep records of each gambling device owned or possessed by him or in his custody.[3] Any gambling device possessed or used in violation of the provisions of the Act is subject to seizure and forfeiture to the United States.[4]

1. 15 U.S.C.A. § 1171(a)(2):
   "any other machine or mechanical device (including, but not limited to, roulette wheels and similar devices) designed and manufactured primarily for use in connection with gambling, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property . . . . "

2. 15 U.S.C.A. § 1173(a)(3):
   "It shall be unlawful for any person during any calendar year to engage in the business of repairing, reconditioning, buying, selling, leasing, using, or making available for use by others any gambling device, if in such business he buys or receives any such device knowing that it has been transported in interstate or foreign commerce after the effective date of the Gambling Devices Act of 1962, unless, after November 30 of the preceding calendar year and before the date on which he buys or receives such device, such person has registered with the Attorney General under this subsection."

3. 15 U.S.C.A. § 1173(c)(1):
   "Every person required to register under subsection (a) of this section for any calendar year shall, on and after the date of such registration or the first day of such year (whichever last occurs), maintain a record by calendar month for all periods thereafter in such year of—
   (A) each gambling device manufactured, purchased, or otherwise acquired by him,

   (B) each gambling device owned or possessed by him or in his custody, and
   (C) each gambling device sold, delivered, or shipped by him in intrastate, interstate, or foreign commerce."

4. 15 U.S.C.A. § 1177:
   "Any gambling device transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of the provisions of this chapter shall be seized and forfeited to the United States. All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, insofar as applicable and not inconsistent with the provisions hereof: *Provided*, That such duties as are imposed upon the collector of customs or any other person with respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of gambling devices under this chapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General."

Claimant, a Mississippi resident, operates several companies which install, repair, and recondition amusement machines, including defendant Bally (Bingo) pinball machines, which are mechanical devices designed and manufactured primarily for use in connection with gambling. In 1970 and 1971, claimant was not registered with the Attorney General as required by the Act. Acting under search warrants issued by a federal commissioner, FBI agents seized, in 1970, thirty-one machines owned by claimant from ten locations, including several restaurants and claimant's warehouse. In this action, claimant seeks the return of these machines on the ground that they were illegally seized.

### I. *Due Process*

Claimant contends that the Due Process Clause of the Fifth Amendment to the United States Constitution bars the taking of his property when he had not been notified that seizure and forfeiture would result unless he registered as required by the Act.

To support this argument, claimant relies principally on certain *dicta* in United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), and the holding of United States v. One Bally Sun Valley Pinball Machine, 340 F.Supp. 307 (W.D. La.1972). *Coin & Currency* was based on the constitutional privilege against self-incrimination. To avoid forfeiture of the money there seized, the claimant would have been required to incriminate himself. Such requirement violates the Constitution under the holdings of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). Arguing that *Marchetti* and *Grosso* applied only to criminal proceedings, the Government contended that the *Coin and Currency* forfeiture procedure was civil. The Government reasoned that, in the confiscation of money intended for use in violating Internal Revenue laws, the guilt of the actual owner was irrelevant.

The Government argued, therefore, that Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), which likened the forfeiture of a man's property by reason of offenses committed by him to a criminal action, was inapplicable. In addressing this argument, Mr. Justice Harlan said that

. . . before the Government's attempt to distinguish the *Boyd* case could even begin to convince, we would first have to be satisfied that a forfeiture statute, with such a broad sweep, did not raise serious constitutional questions under that portion of the Fifth Amendment which commands that no person shall be "deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation."

401 U.S. at 720, 91 S.Ct. at 1044. In other words, the Court was concerned with the due process problems that might be found in the argument that the innocence of the owner of the confiscated property withdrew the procedure from consideration in the criminal context.

Mr. Justice Harlan then found, however, that he need not deal with the argument. The statutory procedure by which an innocent owner can retrieve his property from the Secretary of Treasury convinced the Court that the forfeiture statutes, viewed in their entirety, were intended to impose a penalty only upon the non-innocent. It is "those . . . significantly involved in a criminal enterprise," 401 U.S. at 721, 91 S.Ct. at 1045, who are entitled to the Fifth Amendment privilege against self-incrimination, as applied in *Boyd*, *Marchetti*, and *Grosso*. Mr. Justice Harlan thus concluded that, contrary to the Government's argument, the criminal guilt or innocence of the property owner was not irrelevant to the forfeiture statute. Mr. Justice Harlan's due process concern with the forfeiture of an innocent person's property has no application to the case at bar. Here, the machines which claimant owned and pos-

sessed were forfeited because claimant failed to register as required by the law. No "innocent" owner is involved in this case.

Although we have been advised that the Court entered judgment for the Government and the claimant's motion for release of the subject property was eventually denied on the basis of United States v. One 1970 Buick Riviera, 463 F.2d 1168 (5th Cir. 1972), and corrected findings, the claimant seeks support from the reasoning of the published opinion in One Bally Sun Valley Pinball Machine, *supra*, a decision of the Western District Court of Louisiana. The absence of an innocent owner in this case distinguishes it from *One Bally Sun Valley Pinball Machine*. In *One Bally Sun Valley Pinball Machine,* the United States seized pinball machines located on the premises of retailers who had not paid the federal tax on coin-operated devices. It was not the machines' owner, but the owners of the retail establishments, who were liable for the tax. The seizure was made without any prior notification to the owner of the machines that the tax was due or that seizure would be the penalty for nonpayment. Thus, the claimant's machines were forfeited because of the nonpayment of taxes owed by another. The District Court did not indicate that the "prior notification" concept it developed would have been applicable if the *owner* of the machines had failed to pay a tax which *he* owed, and only that factual setting would be analogous to the case at bar.

McKeehan v. United States, 438 F.2d 739 (6th Cir. 1971), also cited by claimant, has little precedential value for us. In *McKeehan,* the claimant was a gun collector who was technically covered by the registration requirements of a new law, even though its primary purpose was not to regulate those who lawfully and passively possessed firearms as collectors' items. The Court thought that, under those circumstances, forfeiture without notice was an unconstitu-tional deprivation of personal property "without just compensation." In the case at bar, however, claimant was actively engaged in the exact business which Congress sought to regulate. In such instances, no proof of specific intent is required, and the absence of this requirement in what is essentially a regulatory statute governing an highly regulated industry does not violate due process requirements. *See* United States v. International Minerals & Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1970).

This Court has previously refused to extend *Coin & Currency* beyond the self-incrimination privilege to the due process clause. United States v. One 1970 Buick Riviera, supra. The same result has been reached in the Ninth Circuit. United States v. One 1967 Ford Mustang, 457 F.2d 931 (9th Cir. 1972), cert. denied, 409 U.S. 850, 93 S.Ct. 59, 34 L.Ed.2d 92 (1973).

It has traditionally been held that *in rem* proceedings constitute not a taking of private property for public use under the Fifth Amendment, but an exercise of the police power. *See* Van Oster v. Kansas, 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926); Goldsmith-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921); Associates Investment Co. v. United States, 220 F.2d 885 (5th Cir. 1955).

■ Claimant's argument, to the extent it is based on unconstitutional vagueness, is without merit. In considering such an argument directed at Section 1171, which defines "gambling devices," and Section 1177, which requires a forfeiture, the Sixth Circuit held that the contention that the statute was not clear and readily understandable is an "insult to the intelligence of even a beginner reader." United States v. H. M. Branson Distributing Co., 398 F.2d 929, 934 (6th Cir. 1968).

## II. Machines Manufactured Prior to Act's Effective Date

Claimant contends that the Gambling Devices Act is not applicable to the ten pinball machines manufactured prior to the effective date of the Act, December 17, 1962, because they neither affected nor were transported in interest commerce after that date.

The structure of the Act defeats this argument. It is not the machines, but the persons possessing them who are required to be registered with the Attorney General. 15 U.S.C.A. § 1173(a)(3). The registrant is then required to maintain records of *all* gambling devices in his possession or use:

> Every person required to register under subsection (a) of this section for any calendar year shall, on and after the date of such registration or the first day of such year (whichever last occurs), maintain a record by calendar month for all periods thereafter in such year of . . .

> (B) each gambling device owned or possessed by him or in his custody
> . . . .

15 U.S.C.A. § 1173(c)(1).

This provision is directed toward regulation of the registrant's activities. Since he was required to register upon the receipt of machines after the effective date of the Act, he had to maintain records for all of his machines, including the ten received before the Act. Thus, any machine which he was required to record, and did not, is "possessed or used in violation of the provisions of this chapter" and may be seized and forfeited to the United States. 15 U.S.C.A. § 1177. There is no indication that Congress intended to restrict forfeiture to only those machines which trigger the registration requirement.

## III. Search Warrant

Claimant contends that the pinball machines found at his warehouse were seized illegally because (1) the search warrant was based on an FBI agent's observation of a Bally Magic Ring machine which allegedly had never been on the premises; (2) the observations were made by means of an alleged trespass and were therefore illegal under Mississippi law; and (3) the affidavit on which the warrant was issued does not meet the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Since claimant concedes that the seizure was made under warrant, he bears the burden of establishing the illegality of the search. United States v. Crane, 445 F.2d 509 (5th Cir. 1971); United States v. Thompson, 421 F.2d 373 (5th Cir. 1970), vacated on other grounds, 400 U.S. 17, 91 S.Ct. 122, 27 L.Ed.2d 17.

Claimant's *first* argument is based on a conflict in the evidence which was resolved against him by the trial court. An FBI agent reported to his superior and later testified at trial that he had twice observed a Bally Magic Ring machine at the warehouse and that he had made a contemporaneous report of this fact. Although claimant's employee testified that there was no machine of this description at the warehouse, he said that he could not be sure of the types and number of machines in the warehouse in 1970 and that some were inoperative and were kept for use of their parts. The trial court's finding, consequently, was not clearly erroneous.

Claimant's *second* argument is that the agent's observations of the machine were illegally made under Davidson v. State, 240 So.2d 463 (Miss.1970), which held that information obtained by trespassing on the defendant's land could not be used to obtain a search warrant. In the case at bar, however, the trial court specifically found that there was no evidence that a trespass was committed. On the agent's first visit to the warehouse, he was there on official business, remained in a public

area, and observed the machine in a back room through an open door. Although he concealed the true purpose of his second visit, he openly entered and remained in the public area. In any event, federal law controls. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); United States v. Melancon, 462 F.2d 82 (5th Cir. 1972). The federal courts have consistently held that a law enforcement officer may enter commercial premises open to the public and observe what is in plain view. *See* Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L. Ed.2d 312 (1966); On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L. Ed. 1270 (1952).

■■ Claimant's *third* argument is that the search warrant was insufficient on its face because the affidavit failed to meet the *Aguilar* standards. *Aguilar,* however, is not applicable to claimant's case. The affidavit in *Aguilar* merely repeated the conclusions of an unidentified informer who was not shown to be either creditable or in a position to possess the information attributed to him. The affidavit here contained the observations of a veteran FBI agent who said that he personally observed the machine. Observations of fellow Government officers engaged in a common investigation are a reliable basis for a warrant issued by a Government official. *See* United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684 (1965).

■ In executing a valid warrant for the described machine, the agents were authorized to seize similar gambling devices found in plain view even though not described in the warrant. United States v. Kane, 450 F.2d 77 (5th Cir. 1971), cert. denied, 405 U.S. 934, 92 S.Ct. 954, 30 L.Ed.2d 810 (1972). Even if the described item is not found, the seizure of other items is not necessarily unlawful. *See* Bryant v. United States, 252 F.2d 746 (5th Cir. 1958).

Affirmed.