[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12520
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cv-00097-CDL

CAREY A. FORTSON,

Plaintiff - Appellant,

versus

CITY OF ELBERTON,
JIMMY JORDAN,
DANIEL WHITE,
JOSEPH DAVID,
SCOTT MARUNICH,
MARK WELSH,

Defendant - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(November 21, 2014)

Before TJOFLAT, WILSON, and JORDAN, Circuit Judges.

PER CURIAM:

Carey A. Fortson filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the City of Elberton and individual Officers Jimmy Jordan, Daniel White, Joseph David, and Scott Marunich for violating his Fourth Amendment rights. According to Mr. Fortson, the Officers conducted an unconstitutional warrantless search of his business, Carey's Arcade and Game Room, on July 21, 2012. The district court granted the defendants' motion for summary judgment, and Mr. Fortson now appeals.[1] We affirm.

# I

Mr. Fortson owned and operated Carey's, a business with arcade style games, pool tables, and space to rent for private parties. Carey's did not have a license to sell alcohol.

On the date in question, July 21, 2012, Mr. Fortson had rented Carey's to Jackie Hamm, who was hosting a "Birthday Bash." Ms. Hamm prepared flyers announcing the event. Fourteen days before the party, on July 6, 2012, Investigator Scott Marunich of the Elberton Police Department sent an e-mail to Department Chief Mark Welsh with a photocopy of Ms. Hamm's flyer, which described the party as an "all u [sic] can drink affair" with a cover charge. Investigator

---

[1] In his brief, Mr. Fortson fails to make any arguments with respect to Officers White, Marunich, and Welsh. We therefore only address the claims against Officers David and Jordan.

Marunich's e-mail stated: "I'll forward this to the officers next week so they won't forget it."

On the night of July 20th and the early morning hours of July 21st, the Elberton Police Department received three separate noise complaints alleging that there was loud music coming from Carey's. Officer David investigated the first two noise complaints. On his first visit, he heard loud music emanating from Carey's whenever the door opened. Mr. Fortson admitted the door was open for extended periods of time when guests were in line to get inside. On Officer David's second visit, he informed an individual standing outside Carey's that he would shut down the party if he received additional complaints. Officer David did not enter Carey's when he investigated the first two noise complaints that night.

After Officer David's second visit to Carey's, the Department received a third noise complaint. Officer David returned to Carey's with Captain Jordan. They reported hearing "loud music" emanating from Carey's. The party at this time was ending and people were leaving, but the music was still playing and guests were inside. Officer David and Captain Jordan entered Carey's without a warrant to request that the music be turned off. Officer David asked the DJ to turn the music off, while Captain Jordan took photographs of items inside Carey's to document possible ordinance violations. All photographs depicted items that were in plain

3

sight. Mr. Fortson was present at Carey's when the officers entered, but was not aware the officers had entered until Captain Jordan began taking photographs.[2]

On August 10, 2012, August 26, 2012, and December 15, 2012, officers again entered Cary's without a warrant to request that loud music either be turned off or that the noise volume be lowered. No search was conducted during any of these subsequent visits. No one was detained, arrested, or cited as a result of any of these visits or events. Mr. Fortson was present during these events and did not give the officers permission to enter Carey's.

In 2013, Mr. Fortson filed the current § 1983 action against the City of Elberton and certain of its officers. He alleged that, as a result of the officers' Fourth Amendment violations, he was unable to generate enough revenue and forced to close Carey's. Motions for summary judgment were filed by both parties, and the district court granted summary judgment in favor of the City and the officers. It concluded that the individual officers were entitled to qualified immunity, and there was no basis to hold the City liable.

## II

We review the district court's grant of summary judgment *de novo*. *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). Summary judgment is proper when "there is no genuine dispute as to any material fact," and the moving

---

[2] The photographs depicted evidence of what might have been the sale of alcohol without a liquor license.

4

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). "[W]hen a defendant moves for summary judgment based on the doctrine of qualified immunity, the court must view the facts in the light most favorable to the plaintiff." *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir. 1992).

## A

To raise a claim under § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under the color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). "Qualified immunity protects government officials who have acted within their discretionary authority from civil trials and other litigation burdens if their conduct violates not clearly established statutory or constitutional rights of which a reasonable person would have known." *Crosby v. Paulk*, 187 F.3d 1339, 1344 (11th Cir. 1999) (internal quotations omitted). *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). To succeed on a § 1983 claim and overcome an officer's assertion of qualified immunity, a plaintiff must demonstrate that the official in question (1) violated a federal right, (2) which was clearly established at the time of the violation. *Crosby,* 187 F.3d at 1345.

Courts may address the prongs of the qualified immunity standard in the order they deem appropriate. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the district court chose to address the clearly established right prong first and

5

concluded that the officers did not violate a clearly established right when they entered Carey's, asked the DJ to turn off the music, and took pictures of items that were in plain sight. We agree.

A right is clearly established if it is "sufficiently clear [such] that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *See also Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1327 (11th Cir. 2006). When determining whether a right was clearly established at the time of the alleged violation, we look only to binding precedent from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about)," that the government agent's conduct "violate[d] federal law [under those] circumstances." *Crosby*, 187 F.3d at 1345.

We find no binding precedent from the United States Supreme Court, the Eleventh Circuit, or the Supreme Court of Georgia that would have put Officer David and Captain Jordan on notice that entering Carey's to have the loud music turned off violated the Fourth Amendment. Mr. Fortson does not cite to any case

6

that holds that police entry into a commercial establishment that is rented out to another individual and open to the public for a cover charge, for the purpose of enforcing compliance with a local sound ordinance, constitutes a violation of an owner's constitutional privacy right, or that police taking pictures of items that are in plain sight constitutes an unconstitutional search and seizure under the Fourth Amendment.

Mr. Fortson relies heavily on *Swint v. City of Wadley, Ala.*, 51 F.3d 988 (11th Cir. 1995), where we held that an armed SWAT team's warrantless raid of a nightclub—where patrons were personally searched and the cash register was emptied by officers—violated the Fourth Amendment. Four years later, however, in *Crosby*, we ruled that the warrantless search of a nightclub to determine whether alcohol was being served to underage minors was not unconstitutional. *Crosby*, 187 F.3d 1339. Significantly, "public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Id.* at 1345. "For qualified immunity to be surrendered, preexisting law must dictate" the "materially similar" conduct was a violation. *Id.*

The Fourth Amendment protects an individual's reasonable expectation of privacy in his place of business, but that expectation is "indeed less than[] a similar expectation in an individual's home." *New York v. Burger*, 482 U.S. 691, 699 (1987). *See also O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004). An

individual's right to privacy in his place of business is not absolute, and "[w]hat is observable by the public is observable, without a warrant, by the Government inspector as well." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978). *See also United States v. Hall*, 47 F.3d 1091, 1096 (11th Cir. 1995) ("[A] commercial proprietor has a reasonable expectation of privacy only in those areas where affirmative steps have been taken to exclude the public."). While mere entry can constitute a search when a business owner has a reasonable expectation of privacy, *see O'Rourke*, 378 F.3d at 1207, "a law enforcement officer may enter a commercial premises open to the public and observe what is in plain view." *United States v. Various Gambling Devices*, 478 F.2d 1194, 1200 (5th Cir. 1973). Police officers, moreover, "can enter onto [and individual's] property . . . in order to carry out legitimate police business." *Coffin*, 642 F.3d at 1012.

Here, Officer David and Captain Jordan were responding to repeated noise complaints. They entered Carey's with the purpose of requesting that the loud music, which had already generated three noise complaints and may have violated a city ordinance, be turned off. Mr. Fortson contends that because the lights at Carey's had been turned on and patrons were leaving, Officer David and Captain Jordan had no legitimate reason to enter the premises. However, by Mr. Fortson's own admission, the music was still playing when the officers entered Carey's, and the officers were, as noted, responding to a noise complaint. Once they were

8

inside, under the plain view doctrine, they were entitled to take note of and document what was in plain sight. *See O'Rourke*, 378 F.3d at 1208 (The plain view doctrine also makes clear that "officers have the right to make observations from any place where they have the right to be.").

Whether Mr. Fortson had a Fourth Amendment right to privacy in a place of business he had rented out to Ms. Hamm that was open to the public for a cover fee is a question the district court did not address. We do not address it either, but to the extent that Mr. Fortson might have had a privacy right, we agree with the district court that such a right was not "clearly established," and that Officer David and Captain Jordan would not have been on notice that their conduct was unconstitutional. They are, therefore, entitled to qualified immunity, and summary judgment in their favor was properly granted.

**B**

Municipalities and local government units cannot be found liable under § 1983 under a *respondeat superior* or vicarious liability theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). A plaintiff must instead demonstrate that (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy, custom, or practice caused the violation. *Bankshot Billiards, Inc.*, 634 F.3d 1340, 1349 (11th Cir. 2011). Mr. Fortson appears to assert that the officers'

warrantless entries into Carey's in July, August, and December of 2012 demonstrate an unofficial custom or policy that constitutes deliberate indifference to his constitutional rights.  We disagree.

Although municipal liability may be based on an unwritten and unofficial custom or practice demonstrated through the repeated acts of the municipality, *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003), the only unofficial custom or practice the officers' conduct here demonstrates is one of diligently responding to and investigating noise complaints. The officers, moreover, did not enter Carey's after each complaint, and Officer David warned a patron outside of Carey's that he would shut down the party if there was a subsequent noise complaint. Finally, the officers only took pictures of items in plain sight on one occasion at Carey's. These facts do not demonstrate that the City had a custom or policy that subjects it to liability under § 1983. The district court did not err in granting summary judgment to the City of Elberton.

## III

The district court's grant of summary judgment is affirmed.

**AFFIRMED.**

10