UNITED STATES of America, Libelant,

v.

FIVE (5) COIN–OPERATED GAMING DEVICES and $257.20 in Coin, Respondent.

Civ. A. No. 105.

United States District Court
W. D. Virginia,
Charlottesville Division.

Oct. 15, 1965.

James C. Roberson, Asst. U. S. Atty., Roanoke, Va., for libelant.

Robert M. Musselman, Charlottesville, Va., for respondent.

MICHIE, District Judge.

This is a civil proceeding brought by the United States of America by the filing of a libel of information on May 23, 1963, against Five (5) Coin-Operated Gaming Devices and $257.20 in coin. The libel alleges that on or about December 19, 1962, these five coin-operated gaming devices were used and intended for use in carrying on the trade and business subject to the tax imposed by 26 U.S.C. 4461(a) (2),[1] without the special

---

[1]. The applicable portions of the relevant statutes are as follows:

§ 4461 Imposition of tax

(a) In general—There shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated amusement or gaming device at the following rates:

(2) $250 a year, in the case of a device defined in paragraph (2) of section 4462(a).

[26 U.S.C.A. § 4461(a) (2) (Supp.1964).]

§ 4462 Definition of coin-operated amusement or gaming device.

(a) In general—For purposes of this subchapter, the term "coin-operated amusement or gaming device" means—

(2) any machine which is—

(A) a so-called "slot" machine which operates by means of the insertion of a coin * * * and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive, cash, premiums, merchandise, or tokens, or * * *.

[26 U.S.C.A. § 4462(a) (2) (A) (Supp. 1964).]

§ 4901 Payment of tax

(a) Condition precedent to carrying on certain business.—No person shall be engaged in or carry on any trade or business subject to the tax imposed by section * * *, 4461(2) (coin-operated gaming devices) * * * until he has paid the special tax therefor.

(b) Computation.—All special taxes shall be imposed as of on the first day of July in each year, or on commencing any trade or business on which such tax is imposed. In the former case the tax shall be reckoned for 1 year, and in the latter case it shall be reckoned proportionately, from the first day of the month in which the liability to a special tax commenced, to and including the 30th day of June following.

(c) How paid.—

(1) Stamp.—All special taxes imposed by law shall be paid by stamps denoting the tax.

[26 U.S.C.A. § 4901 (1955).]

§ 7302. Property used in violation of internal revenue laws.

It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property

occupational tax required by 26 U.S.C. 4901(a) having first been paid; that by reason thereof, and under the provisions of 26 U.S.C. § 7302, the devices and coins were forfeited to the United States. The libel further alleges that, at the time of seizure, the five coin-operated gaming devices were not registered with the District Director of Internal Revenue, Richmond, Virginia, as required by 26 U.S.C. § 7011(a), and 26 C.F.R. 45.7011.1, thereby causing forfeiture of the property to the United States, pursuant to 26 U.S.C. § 7302. Claim and Bond for costs were filed on February 14, 1963, by the claimant, A. E. Edwards.

The five coin-operated devices which are the subject matter of this action are coin-operated gaming devices within the meaning of the statute so as to require the payment of a special tax of $250.00 on each pursuant to 26 U.S.C. § 4461(a) (2). The parties to this action stipulated that these machines were coin-operated gaming devices as defined in 26 U.S.C. § 4462(a) and were coin-operated gaming devices subject to the $250.00 tax imposed by 26 U.S.C. § 4461(a) (2).

The coin-operated gaming devices were owned by A. E. Edwards, trading as Apex Amusement Company, Charlottesville, Virginia. Since 1958 Mr. Edwards has been in the business of supplying coin-operated gaming devices, music and amusement devices to business establishments in the general vicinity of Charlottesville, Virginia. Mr. Edwards had placed the five coin-operated gaming devices involved in this action in the business places hereinafter mentioned.

The evidence disclosed that all five of the coin-operated gaming devices under consideration in this action were placed in use and operation during the month of December, 1962, on the premises where seized prior to the date of seizure. (December 19, 1962). Each coin-operated gaming device was observed in early December before December 19, 1962, by a special agent of the Internal Revenue Service, in use and operation on the premises where later seized, prior to the payment of the $250.00 tax on each machine as required by law and prior to the registration of each machine as required by law.

Two coin-operated gaming devices and coins were seized by the Government agents on December 19, 1962, on premises known as the Crozet Poolroom, Crozet, Virginia, occupied by Carl W. Morris. These devices are described as follows:

One (1) *Bally Ballerina* coin-operated Gaming Device, Serial Number B 2036, containing $98.20 in coins;

One (1) *Bally Cypress Gardens* coin-operated Gaming Device, Serial Number C 2318, containing $37.50 in coins.

These machines were observed on the premises where seized on December 7, 14, and 19, 1962, by the Government agent. The machines were in use and operation.

Two coin-operated gaming devices and coins were seized by the Government agent on December 19, 1962, on premises known as the Colonial Truck Stop, Ruckersville, Virginia, which premises were occupied by C. B. Fewell. These devices are described as follows:

One (1) *Bally Can-Can* coin-operated gaming device, Serial Number 1576, containing $70.45 in coins;

One (1) *Bally Roller Derby* coin-operated gaming device, Serial Num-

under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws.

[26 U.S.C.A. § 7302 (1955).]
§ 7327. Customs laws applicable
 The provisions of law applicable to the remission or mitigation by the Secretary or his delegate of forfeitures under the customs laws shall apply to forfeitures incurred or alleged to have been incurred under the internal revenue laws.
[26 U.S.C.A. § 7327 (1955).]

ber A 1376, containing $42.50 in coins.

These machines were observed on the premises where seized on December 6 and 19, 1962, by the Government agent. The machines were in use and operation.

One coin-operated gaming device with coins was seized by the Government agent on December 19, 1962, on premises known as Lee-Hi Truck Stop, Route 5, Lexington, Virginia, which were occupied by J. C. Heizer. This device is described as follows:

> One (1) *Bally Circus Queen* coin-operated gaming device, Serial Number A 1941, containing $8.55 in coins.

This machine was observed on the premises where seized, on December 13 and 19, 1962, by the Government agent. The machine was in use and operation.

After being advised that the raid had occurred and the gaming devices had been seized, A. E. Edwards, the owner of the machines, mailed three tax returns Form 11–B with checks to pay the tax pertaining to the devices seized to the Internal Revenue Service in Richmond, Virginia, on behalf of the owners and occupiers of the businesses at which the devices were seized. The three tax returns were mailed after the seizure of the machines on December 19, 1962, and the three tax returns were stamped received by the Internal Revenue Service in Richmond, Virginia, on December 20, 1962.

A. E. Edwards testified that he was the owner of all five of the gaming devices seized and that he had coin-operated gaming devices other than those seized on which the special tax of $250.00 had previously been paid. He also testified that he had been advised by representatives of the Internal Revenue Service that the only penalty which would result if the machines were placed in use before the submission of the required Form 11–B would be a five percent late filing penalty in addition to his tax, provided that the required form was submitted within the same calendar month as that of first use. This penalty tax was included in the amount of tax paid on December 19th. The Government offered no testimony in rebuttal to that of Mr. Edwards with reference to the advice given by the Internal Revenue Service representative. Nor did the Government introduce evidence that these machines were intended to be used in violation of the provisions of the internal revenue laws.

While the claimant, Edwards, admits that at the time the machines were seized he had not purchased the tax stamps nor registered the machines, he contends (1) that he had no intent to use the machines in violation of the internal revenue laws in that he had no intent to evade the payment of the tax, and (2) that he had construed the wording on special tax form 11–B in light of the response to his inquiry directed to the District Office of Internal Revenue as permitting the filing of the return and payment of tax at any time within the calendar month in which the machines were placed in operation.

■ As regards the required showing of intent under Section 7302, I am persuaded by the definition set forth by Chief Judge Thomsen in United States v. Five (5) Coin-Operated Gaming Devices, 154 F.Supp. 731, 734 (D.Md.1957). After having quoted the first sentence of Section 7302, Judge Thomsen went on to say:

> The word "intended" in that sentence does not refer to an intention to evade the tax, but to the use to which the machines are to be put, if they have not already been so used. If a machine is intended to be used for gaming purposes, and the operator of the business has not paid the tax, it may be seized and forfeited, even though the government may not be able to prove that the particular machine has been so used. *The operator's intention with respect to paying the tax is immaterial; the question is whether he has paid it.* (Emphasis added)

In affirming that decision, Judge Parker stated:

The intent required by the statute, 26 U.S.C. § 7302, is that the gaming devices be used in the business subject to tax upon which the tax has not been paid.

Voglino v. United States, 253 F.2d 794, 796 (4th Cir. 1958). Even if I were inclined to disagree, which I am not, with the interpretation of the intent required, I would be bound by this interpretation.

With claimant's second contention I have a great deal of sympathy but regret that I find the law to the contrary. Basically, he contends that the Government is estopped to forfeit these machines because he was led by the wording on the return and by an Internal Revenue agent's response to his inquiry into believing that he had until the end of the calendar month of first use in which to file his return.

In making this defense claimant relies largely upon the "Important Notice" provision on the reverse side of Form 11–B reading as follows:

### "IMPORTANT NOTICE

Persons required to file Form 11–B for coin-operated gaming devices must file such return on or before July 1, or before business is commenced. If machine has been placed in use before the purchase of stamp, enter date first used:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(Month)     (Day)     (Year)

All other persons required to file Form 11–B must file such return on or before the last day of July or before the last day of the month in which the business commenced."

He contends that the sentence beginning "If machine has been placed in use before the purchase of the stamp, enter date first used" plainly implies a permissive construction to the otherwise mandatory "must" language of the preceding sentence by asking for the date of first use if the machine was placed in use prior to filing the return. The claimant contends that this lulls the taxpayer into believing that he has until the end of the calendar month of first use in which to file his return, and that failure to do so will not result in a penalty assessment. Impliedly, the sentence clearly leads the taxpayer to believe this. And, in this regard, it is important to note that the penalty of forfeiture for such use is nowhere brought to the attention of the taxpayer in this Form 11–B. The instructions on the lower reverse side merely state that the "law provides penalties for late filing of a return and interest for late payment of the tax." They do not indicate that any such penalties will be applicable if the machine is placed in use prior to the filing and payment. In addition, there appears on the front of Form 11–B the following instruction:

A separate return must be filed in each class of tax. For instructions on due date see back of this form.

This statement refers the taxpayer to the "Important Notice" provision on the back of the form, as quoted above.

Claimant testified that he had inquired of the Internal Revenue Service as to when he had to pay the tax, and was instructed that no sanctions would be imposed as long as he filed his return within the calendar month of first use. He was further advised that in cases of late payment a five percent penalty was assessed. He claims that it was his intention to file the form and pay the tax and that in accord with this understanding he was planning to act accordingly before the end of December. At the time of the seizure, December 19th the claimant had the executed forms 11–B on his desk and the checks already made out. The checks were mailed immediately upon learning of the seizures.

It was further brought out at the trial that the claimant had been in this business for a number of years and had never before been delinquent in payment of the tax.

In raising this defense of estoppel, the claimant is asking this Court to invoke its equity powers to bar this forfeiture.

By doing so the claimant raises the question of the applicability of equitable principles as a defense in a proceeding to enforce a statutory penalty.

Section 4901 of the Internal Revenue Code of 1954 provides that the special tax imposed by section 4461(a) (2) of that Code as amended in 1959 must be paid before the taxpayer engages in or carries on any trade or business subject to the special tax. Failure to pay the tax beforehand would be a violation of the internal revenue laws. Regardless of the meaning to be inferred from Form 11–B, the language of section 4901 is clear as to its intent.

Under section 7302 of the Internal Revenue Code, property possessed or used with the intent to violate the internal revenue laws shall be subject to forfeiture. Voglino v. United States, 253 F.2d 794 (4th Cir. 1958).

In light of this clear statutory language, these machines become subject to forfeiture under section 7302 when placed in use prior to payment of the special tax. Therefore, the issue before me narrows itself to whether the equitable principle of estoppel can be applied to mitigate the harshness of this forfeiture.

■ At the outset it is important to keep in mind that section 7302 which provides for a forfeiture under the facts of the instant case is a statutory penalty.

> As a general rule, a court of equity will not grant relief against a statutory penalty. Where the intent of the statute is to provide a specific penalty for a specified default, equity has no jurisdiction to grant relief, since to do so would run counter to the statute. This is not to say, however, that a court of equity, where a showing of special equities is made, cannot consider the question whether the conditions under which the statutory penalty attaches exist.

30 C.J.S. Equity § 55, at p. 887 (1965) (footnotes omitted); United States v. Dieckerhoff, 202 U.S. 302, 26 S.Ct. 604, 50 L.Ed. 1041 (1906). In Dieckerhoff

the court pointed out that the intent of the customs statute under consideration was to enforce the collection of the revenues and that if they were correct in holding that it was

> the intention of Congress to provide a specific penalty for failing to return the merchandise as required, [then] it is not within the province of courts of equity to mitigate the harshness of penalties or forfeitures in such cases, for such relief would run directly counter to the statutory requirements.

Id. at 313, 26 S.Ct. at 608.

In cases involving forfeiture of property used in liquor violations, Congress has provided in 18 U.S.C. § 3617 remittance and mitigation procedures to be exercised by the district court. From its title and substantive provisions it is clear that this section applies only in cases of liquor violations. It is also a discretionary procedure with the court. United States v. One 1955 Model Buick, 241 F.2d 90 (4th Cir. 1957).

Though still relating to alcohol violations it is of interest to note the case of United States v. One 1950 Lincoln Sedan, 196 F.2d 639 (5th Cir. 1952), in which the court held that there was no place for equitable concepts in considering a remission under a former version of 18 U.S.C. § 3617.

> The court below believed that the claimants acted in perfect good faith and doubtless was impressed by the inequity which would result from a strict enforcement of the literal provisions of the statute. But we are dealing here with power not equity and since we have no power to relax the express provisions of the statute, it follows that the District Court should have denied claimants' petition for remission.

Id. at 642.

And in reaffirming this position in 1958, the 5th Circuit stated:

> Of course, we must test this [compliance with a condition of section 3617] by the terms of the statute.

Without it Courts are powerless to mitigate against forfeiture no matter how harsh [citation omitted]. So too, where the words of the statute, sensibly construed, cover the situation, Courts cannot apply some other standard or policy. "The granting of relief under this statute is not a matter of equity and since it is not the court has no power to relax the express provisions of the statute."

[Section 3617]. (Citations omitted) United States v. One 1955 Model Ford, 261 F.2d 125, 127 (5th Cir. 1958).

A concise review of the statutory development of the former liquor violation mitigation and remission provision [now 18 U.S.C. § 3617] is found in United States v. One 1936 Model Ford V–8 De Luxe Coach, 307 U.S. 219, 226–236, 59 S.Ct. 861, 83 L.Ed. 1249 (1937). After a review of pre-1935 remission provisions as well as the legislative history behind the 1935 Act [now 18 U.S.C. § 3617], the Court applied a liberal construction to one of the conditions set forth therein. It reasoned that Congress had not abandoned its equitable policy of relieving those who act in good faith and without negligence in inquiring as to facts about all persons connected with the sale of a motor vehicle. This policy had prevailed in pre-1935 remission statutes and, absent "unclouded language" to the contrary in the 1935 Act, the Court believed it to still be the intent of Congress.

This case, I believe, clearly indicates in its review of prior legislation, that the question of remission and mitigation had always been reserved by Congress as the only intended relaxation of its harsh provisions of forfeiture of property used in violation of the revenue laws. The Court recognized that forfeitures were "exceedingly drastic" and were "intended for protection of the revenues, [and] not to punish without fault." Id. at 236, 59 S.Ct. at 870. Even so, the Court further recognized that relief from the harshness of a statutory penalty was to be found with Congress and not with the courts save by an express mandate from Congress. Accord, Scaife Co. v. Commissioner, 314 U.S. 459, 62 S.Ct. 338, 86 L.Ed. 339 (1941) ; J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36 (1940).

In Scaife the Court held that, as concerns an Act of Congress, the invocation by the courts of their equity powers to allow a result contrary to the express provisions of the statute would place the courts in the realm of performing legislative or administrative functions and, albeit the result may be harsh, such considerations of harshness, "though a basis for an appeal to Congress for relief in individual cases, are not appropriate grounds for relief by the courts from the strictness of the statutory demand." Id. 314 U.S. at 463, 62 S.Ct. at 341. In the Riley case Congress had empowered the Commissioner to grant a reasonable extension for filing returns, not to exceed six months. In refusing to extend this period beyond the six months provided by Congress, the Court noted that to allow such an extension would be to perform a legislative rather than a judicial function.

[T]o require the administrative branch to extend the time for filing on a showing of cause for delay would be to vest in it discretion which the Congress did not see fit to delegate.

Petitioner urges that this result will produce a hardship here. It stresses the fact that it had no actual knowledge of the new opportunity afforded it by § 114(b) (4) of the 1934 Act and that equitable considerations should therefore govern. That may be the basis for an appeal to Congress in amelioration of the strictness of that section. But it is no ground for relief by the courts from the rigors of the statutory choice which Congress had provided.

Id. 311 U.S. at 59, 61 S.Ct. at 97.

In forfeiture cases not involving liquor violations, Congress has provided that the "provisions of law applicable to the remission or mitigation by the Secretary or his delegate of forfeitures under the customs laws [19 U.S.C. § 1618] shall

apply * * *." 26 U.S.C. § 7327. Section 7327 stems directly from the Act of May 29, 1928 (c. 852, § 709, 45 Stat. 791, 882. The provisions for remission or mitigation of forfeitures arising from violations of the customs laws are found in 19 U.S.C. § 1618. It provides for remission or mitigation of a forfeiture if the Secretary of the Treasury

> finds that such * * * forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or [if he] finds the existence of such mitigating circumstances as to justify the remission or mitigation of such * * * forfeiture * * *. 19 U.S.C.A. § 1618 (1965)

 I think it clear from the language of section 7327 that the power of remission or mitigation in cases involving other than liquor violations of the revenue laws is within the discretion of the Secretary of the Treasury or his delegate and there is no power to exercise such remission or mitigation in the courts. United States v. One 1958 Pontiac Coupe, 298 F.2d 421 (7th Cir. 1962) (relating to a gambling business). Furthermore, the procedure is discretionary with the Secretary and there is no jurisdiction in the courts to review his decision even if arbitrary. United States v. One 1951 Cadillac Coupe DeVille, 108 F.Supp. 286 (W.D.Pa.1952).

In conclusion, I find that until 1935 the courts were without jurisdiction to remit or mitigate any statutory forfeiture under the internal revenue laws. In 1935, Congress enacted what is now 18 U.S.C. § 3617 which gave the district court exclusive jurisdiction to remit or mitigate forfeitures of vehicles used in transporting illegal liquor in violation of the internal revenue laws. This grant was limited to liquor violations. By express language in 26 U.S.C. § 7327 Congress has limited remission and mitigation of forfeitures in cases involving non-liquor violations to the discretion of the Secretary of Treasury.

In the light of the authorities, I cannot apply equitable principles, such as estoppel, to mitigate the harshness of this statutory forfeiture. To do so would be to defeat the clear intention of Congress as expressed in section 7327. Certainly, had Congress desired, it could have given the district court the power in gambling cases to remit or mitigate forfeitures as it did in cases of liquor violations under 18 U.S.C. § 3617.

While I feel that the claimant Edwards has been harshly dealt with here, I further feel that no relief can be granted by this court. Instead he should proceed to seek such relief from the Secretary as provided under section 7327.

A decree will be entered accordingly but, pending appeal or petition to and action by the Secretary, the Marshal shall retain possession of the property.