**UNITED STATES of America,**
**Plaintiff,**

v.

**TEN COIN–OPERATED GAMING DE-**
**VICES, etc., Defendant.**

**Civ. A. No. 71–13–C.**

United States District Court,
N. D. West Virginia.

Feb. 5, 1975.

James F. Companion, United States Attorney, Wheeling, W. Va., for plaintiff.

Jerald E. Jones, Clarksburg, W. Va., for defendant.

## OPINION

ROBERT EARL MAXWELL, Chief Judge.

On February 3, 1971, agents of the Internal Revenue Service seized ten coin-operated machines, along with the coin content from the machines in the amount of $645.90, from various business establishments in Clarksburg, Anmoore and Salem, West Virginia. The seizure, without prior notification of tax liability or that seizure is the penalty for nonpayment of taxes, was made pursuant to 26 U.S.C. § 7302, for failure to pay the $250.00 tax imposed by 26 U.S. C. § 4461(a), a violation of 26 U.S.C. § 4901, and for failure to register with the District Director as required by 26 U.S.C. § 7011 and applicable regulations.

The United States subsequently filed a Complaint describing the machines, coin content seized and the location of the establishments where the seizures were made. The Complaint prays forfeiture. American Vending Company, a corporation with its principal office in Clarksburg, West Virginia, intervened, claiming sole ownership of the items seized, and filed its answer to the Complaint.

American Vending Company's answer denies that the coin-operated machines in question are "gaming devices" within the meaning of 26 U.S.C. § 4462(a)(1), and alleges that if the machines were used for gaming purposes, it was without the knowledge, consent or intent of American Vending Company. It also asserts as a defense that the tax imposed by 26 U.S.C. § 4461(a) is on the occupant of the premises, urging that since American Vending Company did not occupy the premises, the seizure of the machines owned by it for nonpayment of the tax is unlawful and unconstitutional.

A hearing was held on January 9, 1975, at which time testimony was adduced and photographs of the machines were admitted into evidence. The hearing focused on the issue of whether the machines in question are "gaming devices."

On this question, Special Agent Russell B. Taylor and Melvin Arena, a former Special Agent of the Internal Revenue Service, who participated in the investigation and seizure, testified. The

witnesses identified the machines seized at the various business establishments. The record reflects fully the description of the machines. Nine of the machines seized (seven "Bally" machines and the two "Silver Sails" machines) were observed to have essentially the same features as those described in United States v. One Bally County Fair Pinball Machine, 238 F.Supp. 362 (W.D.La.1965), United States v. One Bally "Barrel-O-Fun," 224 F.Supp. 794 (M.D.Pa.1963), and United States v. Korpan, 354 U.S. 271, 77 S.Ct. 1099, 1 L.Ed.2d 1337 (1957). The tenth machine, a "Keeney's Shawnee," was described by Agent Taylor as one which could be operated by inserting either a 10-cent or 25-cent coin, followed by the depression of a lever. Wheels containing various insignia (canoes, peace pipes, etc.) would then turn, and if the machine displayed three like insignia, a predetermined number of games would be won and registered on a meter on the machine.

The intervenor-defendant offered no evidence at the hearing, but on cross-examination elicited concessions from the witnesses that although they observed the machines plugged into electrical outlets and lighted up, they did not personally operate the machines, did not observe others operating them, did not observe any person receiving cash, premiums, merchandise or tokens in connection with the operation of the machines and did not inspect or conduct tests on the internal parts of the machines, either before or after seizure. Testimony was also adduced on cross-examination that the wooden rails or frames on the sides of the "Bally" type machines were worn to some degree, indicating that players had influenced or attempted to influence the course of the descent of the balls, which purportedly demonstrated the existence of the element of a skill in the operation of the machines.

The "Bally" and "Silver Sails" machines here possess attributes, viz., a large number of free plays can be won and a concealed "knock-off" button to eliminate such free plays, that the

courts found persuasive in determining that such machines were gaming devices in United States v. One Bally "Barrel-O-Fun," supra, and Turner v. United States, 9 A.F.T.R.2d 2031 (D.Kan.1962). The testimony of Special Agent Taylor and former Special Agent Arena was that these machines possessed tilt mechanisms which limited a player's ability to influence the course and speed of the descent of the balls played. This very limited control available to the player demonstrates that the element of chance is predominant in these machines. As for the "Keeney's Shawnee" machine, the description of the machine indicates that there is no element of skill involved in its operation, and the only material difference between this machine and the traditional "one-armed bandit" type machine is that on the latter the player, with a winning combination, receives coins directly, while on the machine here in question, a winning combination results in the registration on a meter of the number of games won.

■ Notwithstanding the fact that the agents did not play the machines, observe them being played, or test or inspect them, the Court is satisfied that there is sufficient evidence to support the conclusion that each of these machines possesses the features that may entitle a player of the machine to receive cash, premiums, merchandise or tokens, and that there is a substantial element of chance involved in the operation of the machines. It must, therefore, be concluded that these machines are gaming devices within the meaning of 26 U.S.C. § 4462(a)(1) and 26 C.F.R. 45-4462-1. It is well established that evidence of actual payoffs is not required to subject such machines to the tax imposed by 26 U.S.C. § 4461(a). United States v. One Bally "Barrel-O-Fun," supra; Turner v. United States, supra.

■ The remaining contentions of the intervenor are (1) while continuing to deny that the machines were being used as gaming devices, nevertheless, if such were the case, it was without inter-

venor's knowledge, consent or intent; and (2) the tax imposed by 26 U.S.C. § 4461(a) is on the occupant of the premises, and since the intervenor was not an occupant of any of the premises from which the seizures were made, forfeiture of the machines is unconstitutional.

The strongest support for intervenor's contention appears to be United States v. One Bally Sun Valley Pinball Machine, 340 F.Supp. 307 (W.D.La. 1972). There, as in the instant case, a number of "Bally" type pinball machines were seized from retail establishments for nonpayment of the tax imposed on coin-operated gaming devices. In the forfeiture proceeding, the owners of the machines, who were not personally liable for the tax because they were not the occupants of the premises from which the machines were seized, intervened and contested the forfeiture. The court found that the machines were gaming devices within the meaning of 26 U.S.C. § 4462(a)(1), that the forfeiture did not violate the owner's Fifth Amendment privilege against self-incrimination, and that the machines, as chattels, had no constitutional right to due process. However, the court found that the machines were legal under Louisiana law, and were thus not illegal in rem, i. e., not "contraband" in the same context as illegal narcotics or untaxed whiskey, but became illegal only upon failure to promptly pay the tax imposed. Relying on United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the court concluded, 340 F.Supp. at 312, that

> "The Supreme Court decision in United States v. Coin and Currency constitutes a construction of the Fifth Amendment contrary to past interpretations of that amendment and has the effect of barring forfeiture where the seizure was made without prior notification to the owners that the tax was due, or that seizure would be the penalty for nonpayment, and where the tax had been paid, albeit late,

when, as here, the machines were not, per se, illegal in Louisiana."

Although not convinced that the legality or illegality of the machines under state law is crucial, except, possibly on the self-incrimination issue,[1] the instant case appears distinguishable from United States v. One Bally Sun Valley Pinball Machine, *supra*, in that such machines have been held to constitute a lottery per se within the meaning of West Virginia Code § 61–10–11 (Michie 1966). State v. Wassick, 191 S.E.2d 283, 288 (W.Va.1972). More importantly, this Court does not believe that United States v. United States Coin & Currency, *supra*, dictates the conclusion reached by the court in United States v. One Bally Sun Valley Pinball Machine, *supra*.

In Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), Justice Brennan, speaking for the majority, stated at 680, 94 S.Ct. at 2090:

> "Appellants next argue that the District Court erred in holding that the forfeiture statutes unconstitutionally authorized the taking for government use of innocent parties' property without just compensation. They urge that a long line of prior decisions of this Court establish the principle that statutory forfeiture schemes are not rendered unconstitutional because of their applicability to the property interests of innocents, and further that United States v. United States Coin & Currency, 401 U.S. 715 [91 S.Ct. 1041, 28 L.Ed.2d 434] (1971), did not—contrary to the opinion of the District Court—overrule those prior precedents *sub silentio*. We agree. The historical background of forfeiture statutes in this country and this Court's prior decisions sustaining their constitutionality lead to that conclusion."

After tracing the historical background of forfeiture statutes, Justice

---

1. The self-incrimination issue was considered and rejected in United States v. 20 "Dealer's Choice" Mach. & C. Con. of $3.50, 483 F.2d 474 (4th Cir. 1973).

Brennan concluded by finding that appellee's reliance on *Coin & Currency* was misplaced, and held:

> " . . . Thus, *Coin & Currency* did not overrule prior decisions that sustained application to innocents of forfeiture statutes, . . . not limited in application to persons 'significantly involved in a criminal enterprise.'" Calero-Toledo v. Pearson Yacht Leasing Co., *supra*, at 688, 94 S.Ct. at 2094.

This Court's reading of Calero-Toledo v. Pearson Yacht Leasing Co., *supra*, compels the determination here that the intervenor's protestations of innocence and its related defense of non-liability for the tax cannot be sustained.

 Counsel for intervenor also contends that the United States failed, at the evidentiary hearing, to prove that the tax for the machines in question was not paid. The hearing held in this matter was in effect directed to the issue of whether the machines in question are gaming devices. The Court did not explicitly or implicitly preclude the submission of evidence on any other facet of the case, and the United States has submitted as attachments A through E to its brief Internal Revenue Forms 4340, certified by the District Director, indicating that no tax was paid by any of the business establishments from which the machines were seized until after the seizure, and then only when assessments were made. It appearing to the Court that the Forms 4340, as certified, are admissible in evidence pursuant to 28 U.S.C. § 1733(b), it is proper that the same be filed and made a part of the record in this action, and as such considered by the Court in resolving the ultimate issues presented.

For the reasons expressed herein, an order will follow filing and making a part of the record of this Civil Action the five certified Internal Revenue Service Forms 4340, presented to the Court in the Brief filed by the United States Attorney of this District and which order will grant the forfeiture sought in this Civil Action by the United States.