**UNITED STATES of America, Plaintiff,**

**v.**

**FOUR (4) PINBALL MACHINES and One (1) Remote Control Device, Defendants.**

**UNITED STATES of America, Plaintiff,**

**v.**

**THREE (3) BALLY PINBALL MACHINES and $325.00 in U. S. Coin, Defendants.**

**UNITED STATES of America, Plaintiff,**

**v.**

**FOUR (4) BALLY PINBALL MACHINES, Defendants.**

**UNITED STATES of America, Plaintiff,**

**v.**

**FOUR (4) BALLY PINBALL MACHINES, FRAME NUMBERS 38859, 5263, 31686, AND 1610, and U. S. Coin in the Total Amount of $100.85, Defendants.**

**Civ. Nos. 74–249, 74–250 to 74–252.**

United States District Court, D. Hawaii.

April 15, 1977.

T. David Woo, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff.

Ernest Y. Yamane, Honolulu, Hawaii, for defendants.

DECISION AND ORDER

WONG, District Judge.

I. BACKGROUND

These four forfeiture actions under 26 U.S.C. § 7302 were consolidated for trial. The government seized the 15 pinball machines following non-payment of the special tax imposed by 26 U.S.C. § 4461(a). Defendant-claimant National Amusement, Inc. is the owner of the 15 pinball machines.

The matter was submitted for trial on stipulated facts and the parties' memoranda. The stipulation of facts recites the following:

1. The 15 pinball machines are gaming devices within the meaning of 26 U.S.C. § 4462(a)(2).[1]

2. A special tax of $250.00 [per machine per year] was required to be paid pursuant to 26 U.S.C. § 4461(a)(2).[2]

3. The special tax imposed by 26 U.S.C. § 4461(a)(2) has not been paid for any of the 15 pinball machines.[3]

4. Defendant-claimant National Amusement, Inc. has been and is engaged in the business of leasing gaming and amusement devices.

5. In the past, National Amusement, Inc. has paid and/or has ensured that lessees of National Amusement, Inc.'s gaming devices have paid the taxes required by 26 U.S.C. § 4461(a)(2).

6. At no time has National Amusement, Inc. attempted to evade payment of the special tax.

7. National Amusement, Inc. is ready, willing, and able to pay the special tax on the 15 pinball machines.[4]

8. The 15 pinball machines were seized on September 15, 1972. National Amusement, Inc. learned of the seizure at that time.

9. Prior to the seizure, National Amusement, Inc. did not know of the government's intent to seize and forfeit the pinball machines for non-payment of the special tax.

10. The 15 pinball machines were seized from premises not maintained, used, or owned by National Amusement, Inc. The premises were maintained, used, or owned by the lessees of the machines.

11. The machines were seized from premises in public places and the machines were in plain view and fully accessible to the public.

## II. DISCUSSION

A special tax of $250.00 per machine should have been paid. It was not. Therefore, under 26 U.S.C. § 4901(a), it became illegal to continue to operate the 15 pinball machines. The machines continued to operate. The government seized the machines and seeks to confiscate the machines and the money found within the machines. National Amusement, Inc. seeks to prevent forfeiture of the machines.

National Amusement, Inc. has three arguments. First, the machines are not the instrumentalities or fruits of the crime. Second, National Amusement, Inc. is the "innocent" owner of the machines. Third, forfeiture would be a violation of due process.

### A. *Instrumentality of the crime*

The pinball machines are not illegal *per se.* As long as the special tax is paid,

1. The parties have stipulated that the 15 pinball machines in question here are "gaming devices" within the meaning of 26 U.S.C. § 4462(a)(2). It appears that § 4662(a)(1) is more applicable because coins are customarily used to operate pinball machines. Regardless, the case law does support the stipulation that pinball machines are "gaming devices." For example, *United States v. Ten Coin-Operated Gaming Devices*, 388 F.Supp. 801, 803 (N.D.W. Va.1975).

2. 26 U.S.C. § 4461(a) provides that

> [t]here shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated gaming device (as defined in section 4462) at the following rates:
> (1) $250 a year; and
> (2) $250 a year for each additional device so maintained or the use of which is so permitted. If one such device is replaced by another, such other device shall not be considered an additional device.

The tax in § 4461(a)(2) is the same as the tax in § 4461(a)(1).

3. The record does not indicate the number of years the special tax was not paid.

4. National Amusement, Inc. says that its offer to pay the tax is not an admission of tax liability.

the machines can be used.[5] National Amusement, Inc. argues that the machines themselves do not become illegal when the special tax is not paid. What is illegal is the continued operation of the machines. National Amusement, Inc. seeks to distinguish the pinball machines from property which is illegal *per se* or property such as an automobile used to transport illicit drugs.

The court does not agree. The illegal activity here is engaging in or carrying on business subject to the special tax imposed by 26 U.S.C. § 4461(a)(1) without paying the tax. 26 U.S.C. § 4901(a).[6] There cannot be any illegal activity unless there is a pinball machine upon which the special tax was not paid. Hence, the pinball machines are an essential element of the illegal activity in these cases.

A special tax was required to be paid by 26 U.S.C. § 4461(a)(1). Failure to pay the tax and continuing to operate the machines gave rise to a violation of 26 U.S.C. § 4901. The pinball machines thus became property which had been used in violating the provisions of the Internal Revenue Code. As such, it became unlawful to have or possess the pinball machines under 26 U.S.C. § 7302,[7] the forfeiture statute.[8] Other courts have applied this forfeiture statute to pinball machines. For example, *United States v. Various Gambling Devices*, 478 F.2d 1194 (5th Cir. 1973); *United States v. Ten Coin-Operated Gaming Devices*, 388 F.Supp. 801 (N.D.W.Va.1975); *United States v. One Bally Sun Valley Pinball Machine*, Civil Action No. 16,941 (W.D.La. Jan. 19, 1973); *United States v. Five (5) Coin-Operated Gaming Machines*, 246 F.Supp. 349 (W.D.Va.1965); *United States v. One Bally County Fair Pinball Machine*, 238 F.Supp. 362 (W.D.La.1965).

B. *Due process*

National Amusement, Inc.'s innocent owner and due process arguments overlap. Due process is said to be violated because the owner is "innocent" and not significantly involved in the illegal activity.

National Amusement, Inc. admits the validity of the special tax. But it says that the tax is imposed upon the lessees of the machines in this case. National Amusement, Inc. argues that forfeiture statutes are intended to impose a penalty only upon those significantly involved in the criminal activity. National Amusement, Inc. says that it was not significantly involved in the illegal activity since 26 U.S.C. § 4461(a) does not impose the special tax on it. Further, it argues that it is "innocent" because it is not at fault in failing to pay the tax; it is ready, willing, and able to pay the tax; and it has never attempted to evade payment of the tax.[9] Therefore, to forfeit the machines would be a deprivation of property without due process of law. National Amusement, Inc. also argues that it was

5. The pinball machines are not outlawed by any provision of the Hawaii Revised Statutes.

6. 26 U.S.C. § 4901(a) provides that

> [n]o person shall be engaged in or carry on any trade or business subject to the tax imposed by section 4411 (wagering) or 4461(a)(1) (coin-operated gaming devices) until he has paid the special tax therefor.

7. 26 U.S.C. § 7302 provides that

> [i]t shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. . .

8. The forfeiture statute is applicable immediately upon the commission of the illegal act. *Simons v. United States*, 541 F.2d 1351, 1352 (9th Cir. 1976).

9. National Amusement, Inc. says that it has acted in "good faith" and that it is the "innocent" owner. It is not clear whether National Amusement, Inc. is arguing that it did not intend to violate the internal revenue laws. If it is making that argument, it is without merit.

"Intent" under 26 U.S.C. § 7302 means the intent of putting the pinball machines to use, not the intent to avoid the tax. *United States v. Five (5) Coin-Operated Gaming Devices*, 154 F.Supp. 731, 734 (D.Md.1957), *aff'd sub nom., Voglino v. United States*, 253 F.2d 794 (4th Cir.), *cert. denied*, 357 U.S. 919, 78 S.Ct. 1359, 2 L.Ed.2d 1364 (1958); *Five (5) Coin-Operated Gaming Machines*, 246 F.Supp. at 352.

denied due process because it did not have notice of the non-payment of the special tax or the seizure.

1. *Innocent owner*

In *United States v. Bride*, 308 F.2d 470 (9th Cir. 1962), an automobile was seized because it was used by Lisner in illegal bookmaking activities. The automobile was registered to Lisner's wife and a bank was the legal owner. The wife and bank objected to the forfeiture. The district court returned the car to the wife, but the Ninth Circuit reversed. The court said that

> [i]t is well settled that in a proceeding for forfeiture against a motor vehicle for violation of the internal revenue laws the innocence of the registered owner-claimant is no defense, as the proceeding is in rem against the vehicle. It is held . . that in order to relieve the owner from forfeiture where the vehicle was being used without the knowledge or consent of the owner it must be shown that the person so using it had obtained the vehicle in violation of the criminal laws . . . . .

308 F.2d at 473–74 (citations omitted). *Accord United States v. One 1967 Cadillac Coupe Eldorado*, 415 F.2d 647, 648 (9th Cir. 1969).

In *United States v. United States Coin and Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Supreme Court said that forfeiture statutes "are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." 401 U.S. at 722–23, 91 S.Ct. at 1045 (footnote omitted). National Amusement, Inc. argues that since it was not significantly involved in any criminal enterprise, it falls within the protection of *Coin and Currency*.

In *Coin and Currency*, however, the Court also said that

> [i]f we were writing on a clean slate, [the government's] claim that § 7302 operates to deprive totally innocent people of their property would hardly be compelling. Although it is true that the statute does not specifically state that the property shall be seized only if its owner significantly participated in the criminal enterprise, we would not readily infer that Congress intended a different meaning. However, as our past decisions have recognized, centuries of history support the Government's claim that forfeiture statutes similar to this one have an extraordinary broad scope.

*Id.* at 719, 91 S.Ct. at 1043–1044 (citations omitted).

There is the conflicting language from *Coin and Currency* but, more importantly, there is the subsequent case of *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452, *reh. denied*, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). In *Calero-Toledo*, Puerto Rican authorities seized a yacht and charged one of the lessees of the yacht with a marijuana violation. No challenge to the seizure was filed, so the yacht was forfeited to the Puerto Rican government. The owner of the yacht learned of the seizure and forfeiture when attempting to repossess the yacht because of non-payment of rent. Thus, the owner was "innocent;" it was not involved in the criminal activity and it did not know that the yacht was being used to violate the law.

The owner filed an action for declaratory and injunctive relief. It complained that the applicable Puerto Rican statutes were unconstitutional because there was a denial of due process, to-wit, no hearing, no notice, and a deprivation of property without just compensation.

A three-judge district court held for the owner. The court viewed *Coin and Currency* "as having effectively overruled . . prior decisions that the property owner's innocence has no constitutional significance for purposes of forfeiture . . . ." 416 U.S. at 669, 94 S.Ct. at 2085. The Supreme Court called this reliance "misplaced." *Id.* at 688, 94 S.Ct. 2080.

Therefore, the owner's innocence is not a defense to a forfeiture proceeding. It does seem unfair that a truly "innocent" owner's property is forfeited. The courts are not

unsympathetic to the truly "innocent" owner's plight. *See, for example, Calero-Toledo,* 416 U.S. at 688–90, 94 S.Ct. 2080; *United States v. One 1967 Ford Mustang,* 457 F.2d 931, 933 (9th Cir. 1972), *cert. denied, Bank of America v. United States,* 409 U.S 850, 93 S.Ct. 59, 34 L.Ed.2d 92 (1973); *Five (5) Coin-Operated Gaming Machines,* 246 F.Supp. at 356. But the case law is against the "innocent" owner.

2. *Deprivation of property*

These forfeiture actions are *in rem* proceedings against the pinball machines. The Ninth Circuit has said that

> it has been consistently held that these "*in rem*" proceedings do not constitute a taking of private property for public use under the Fifth Amendment, but rather, that they constitute an exercise of the police power.

*One 1967 Ford Mustang,* 457 F.2d at 932. Early Supreme Court cases hold to this proposition. For example, *J. W. Goldsmith-Grant Co. v. United States,* 254 U.S. 505, 509–12, 41 S.Ct. 189, 65 L.Ed. 376 (1921); *Van Oster v. Kansas,* 272 U.S. 465, 468, 47 S.Ct. 133, 71 L.Ed. 354 (1926).

National Amusement, Inc. relies upon *Coin and Currency.* There, Angelini was convicted of failing to register as a gambler and not paying a related gambling tax. The government brought a forfeiture proceeding for $8,674 Angelini had in his possession at the time of his arrest. The district court ordered forfeiture. The Seventh Circuit affirmed. The Supreme Court first remanded the case for further consideration in light of its decisions in *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). *Marchetti* and *Grosso* involved the Fifth Amendment privilege against self-incrimination.

On remand, the district court again ordered forfeiture. The Seventh Circuit reversed, holding that Angelini could assert his privilege against self-incrimination in the forfeiture proceeding. The Supreme Court affirmed.

The Court noted that a forfeiture is a civil action, but that there was no difference between a forfeiture and a criminal fine because "[i]n both instances, money liability is predicated upon a finding of the owner's wrongful conduct; in both cases the Fifth Amendment applies with equal force." 401 U.S. at 718, 91 S.Ct. at 1043 (citation omitted). *See Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (non-payment of duty).

The forfeiture proceeding in *Coin and Currency* was brought pursuant to 26 U.S.C. § 7302, the statute that is being used in the instant case. The due process issue was argued, but the Supreme Court did *not* decide it. 401 U.S. at 721, 91 S.Ct. 1041. Instead, the Court said that

> the broad language of § 7302 cannot be understood without considering the terms of the other statutes which regulate forfeiture proceedings. An express statutory provision permits the innocent owner to prove to the Secretary of the Treasury that the "forfeiture was incurred without willful negligence or without any intention on the part of the petitioner * * to violate the law * * *." 19 U.S.C. § 1618. Upon this showing, the Secretary is authorized to return the seized property "upon such terms and conditions as he deems reasonable and just." It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent petitioner's protests have gone unheeded. When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise. It follows from *Boyd, Marchetti,* and *Grosso* that the Fifth Amendment's privilege may properly be invoked in these proceedings.

401 U.S. at 721–22, 91 S.Ct. at 1044–1045 (citations and footnotes omitted).

*Coin and Currency* seemingly was followed in *United States v. One Bally Sun Valley Pinball Machine,* 340 F.Supp. 307 (W.D.La.1972). The facts in *Sun Valley*

*Pinball Machine* are similar to the case at hand. The owner of the machine did not have notice of the seizure; had previously paid the special tax; was not attempting to evade payment of the special tax; and the state law did not make pinball machines illegal *per se.* In *Sun Valley Pinball Machine,* the owner did not have previous knowledge that non-payment of the special tax could result in forfeiture [10] and the owner did pay the special tax prior to trial.[11]

The published opinion denied a motion for a new trial. The court said that it

> simply cannot believe that the broad language of [26 U.S.C.] § 7302 can be used by the government to seize and destroy machines on which the tax has been paid, albeit late, when the machines are perfectly legal in Louisiana.

340 F.Supp. at 311. The court went on to note that the prior case law had nevertheless upheld forfeiture. *Id.* The court concluded that *Coin and Currency* bars

> forfeiture where the seizure was made without prior notification to the owners that the tax was due, or that seizure would be the penalty for nonpayment, and where the tax had been paid, albeit late, when as here, the machines were not, per se, illegal in Louisiana.

*Id.* at 312.

Subsequent to this published opinion, however, the court in *Sun Valley Pinball Machine* issued a judgment ordering forfeiture of the pinball machine. That judgment was based upon *United States v. One 1970 Buick Riviera,* 463 F.2d 1168 (5th Cir.), *cert. denied, National American Bank of New Orleans v. United States,* 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 214 (1972).

*One 1970 Buick Riviera* was an action by a bank, holder of a chattel mortgage and vendor's lien on a car that was used to transport heroin, seeking review of a denial of a petition for remission and mitigation under 19 U.S.C. § 1618. The Fifth Circuit held that the Attorney General's denial of the petition was unreviewable and that there was no due process violation for failure to grant remission. 463 F.2d at 1170, 1171. On petition for rehearing, the court said that its decision was

> wholly consistent with *Coin & Currency* which recognizes power in the Secretary of the Treasury to return property but "upon such terms and conditions as he deems reasonable and just."

*Id.* at 1171.

The court in *Sun Valley Pinball Machine* changed its mind. The published opinion in that case is of questionable authority at best. It cannot be relied upon to support National Amusement, Inc.'s position.

The government argues that *Coin and Currency* is inapplicable since that case involved the privilege against self-incrimination. Other courts have held that *Coin and Currency* is not conclusive on the due process issue.

In *United States v. Ten Coin-Operated Gaming Devices,* the court granted forfeiture. The court said that it did not think that *Coin and Currency* dictated the conclusion reached in the published opinion in *Sun Valley Pinball Machine.* 388 F.Supp. at 804.

In *One 1967 Ford Mustang,* a car was used to transport counterfeit federal reserve notes. A bank, the legal owner of the car, filed for remission of the automobile. The Attorney General denied the petition and the government instituted forfeiture proceedings. The district court ordered forfeiture and the Ninth Circuit affirmed.

The Ninth Circuit said that a forfeiture pursuant to 49 U.S.C. §§ 781–82, the applicable statute, was an *in rem* proceeding against the automobile and that such proceedings are merely the proper exercise of

10. The record does not reveal whether National Amusement, Inc. knew forfeiture could result from non-payment of the special tax.

11. Here, National Amusement, Inc. has not paid the special tax on the 15 machines, but it has represented that it is ready, willing, and able to pay the special tax. For our purposes this representation is the functional equivalent of actual payment of the tax. We need not decide whether the tax must be paid in order to prevent forfeiture.

the police power. 457 F.2d at 932. In a footnote, the court added that

> [t]he dicta in *United States Coin & Currency* may portend the demise of the doctrines upon which we must base our decision, but the Court's failure to override *Goldsmith-Grant Co.* and its progeny discourages our disregarding the authoritative effect of those cases.

*Id.* at n. 1 (citation omitted).

The court's footnote was well taken. *Goldsmith-Grant Co.* and its related cases remain good law. The Supreme Court agreed in *Calero-Toledo.* There, the Court said

> [a]gainst . . . the long line of this Court's decisions which squarely collide with [the owner's] assertion of a constitutional violation, the District Court opposed our decision in *United States v. United States Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). This reliance was misplaced. . . . *Coin & Currency* did not overrule prior decisions that sustained application to innocents of forfeiture statutes . . . not limited in application to persons "significantly involved in a criminal enterprise."

416 U.S. at 688, 94 S.Ct. at 2094. *Coin and Currency* only decided the self-incrimination issue; it did not decide the due process issue. 401 U.S. at 721, 91 S.Ct. 1041.

Further, the language of the opinion in *Coin and Currency* indicates, to this court at least, that the Supreme Court was concerned primarily with the constitutional problems with respect to criminal procedure. The case at hand does not appear to present any criminal procedure problems.

Even the language of 26 U.S.C. § 7302 supports a conclusion that due process has not been violated. 26 U.S.C. § 7302 says, in part, that "no property rights shall exist in any such property." On its face, § 7302 seems to deny any due process claim. There do not appear to be any cases which address this language in § 7302, but the language is consistent with the early cases which hold that a forfeiture proceeding is a proper exercise of the police power. The scant legislative history says that there was no material change from the existing law when § 7302 was reenacted in 1954. H.R. Rep. No. 1337, 83d Cong., 2d Sess., *reprinted* in [1954] U.S.Code Cong. & Ad.News, pp. 4017, 4578; S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad.News, pp. 4621, 5258. The Tax Reform Act of 1976, Pub.L.No. 94–955, 90 Stat. 1520 (1976), did not amend § 7302.

The Court in *Calero-Toledo* did propose two *possible* exceptions to the general rule finding no due process violation. First, where the property subjected to forfeiture had been taken from the owner without his privity or consent. Second, where the owner proved (1) that he was uninvolved in and unaware of the wrongful activity and (2) that he had done all that reasonably could be expected to prevent the proscribed use of his property. 416 at 689–90, 94 S.Ct. 2080.

In *Calero-Toledo*, the Court said that the owner had voluntarily entrusted the yacht to the lessees and that no "allegation has been made or proof offered that the company did all that it reasonably could to avoid having its property put to an unlawful use." *Id.* at 690, 94 S.Ct. at 2095. Thus, the Supreme Court reversed the three-judge district court.

Here, National Amusement, Inc. voluntarily leased the pinball machines to the lessees. Hence, the first exception is not applicable. The record indicates that National Amusement, Inc. was uninvolved and unaware of the wrongful activity. National Amusement, Inc., however, has not shown that it "had done all that reasonably could be expected to prevent the proscribed use of [its] property . . . ." *Id.* at 689, 94 S.Ct. at 2095. Therefore, National Amusement, Inc. does not qualify for the second exception mentioned by the Supreme Court in *Calero-Toledo.*[12]

The court concludes that these forfeiture proceedings do not deprive National

12. The Court in *Calero-Toledo* did not actually establish two exceptions to the general rule. The Court said that

> [i]t . . . has been *implied* that it would

Amusement, Inc. of its property without due process of law. In *United States v. Five (5) Coin-Operated Gaming Machines*, 246 F.Supp. 349, 356 (W.D.Va.1965), the court said that it could not grant relief to the owner, but that the owner should seek relief from the Secretary of the Treasury pursuant to 26 U.S.C. § 7327 and 19 U.S.C. § 1618.[13] It appears that National Amusement, Inc. has not filed a petition for remis-

be *difficult to reject* the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. Similarly, the same *might be said* of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.

416 U.S. at 689–90, 94 S.Ct. at 2094–2095 (citations and footnote omitted) (emphasis added). These are only two *possible* exceptions. We need not decide whether these are actual exceptions.

Only one case, to date, addresses the second of these proposed exceptions. *United States v. One 1974 Mercury Cougar XR 7*, 397 F.Supp. 1325 (C.D.Cal.1975), involved a forfeiture of an automobile used to transport heroin. The court found that the owner of the car was uninvolved and unaware of the illegal activity and that she had done all that could reasonably be expected to prevent the proscribed use of the car. Of the owner's innocence, the court said that the language in *Calero-Toledo* gave

considerable support to a constitutional attack upon the imposition of forfeitures against [innocent] owner-claimants. Nonetheless, I believe myself bound by *One 1967 Ford Mustang* as stating the rule currently existing in [the 9th] Circuit.

397 F.Supp. at 1329.

Instead, the court returned the car to the owner because the court said it had authority to declare the Attorney General's failure to grant remission unconstitutional if the owner's constitutional claims are meritorious. The owner had filed for remission or mitigation in that case.

The court found the Attorney General's refusal to grant remission constitutionally defective and said that "[t]he just compensation provisions of the Fifth Amendment, therefore, require that the Government restore the defendant automobile to the claimant." 397 F.Supp. at 1330. The court also found that the Attorney General had failed to follow his own regulations. *Id.*

There are several problems with the decision in *One 1974 Mercury Cougar XR 7*. First, the prior case law indicates that the Attorney General's decision on a petition for remission or mitigation under 19 U.S.C. § 1618 is not reviewable. *One 1970 Buick Riviera*, 463 F.2d at 1170; *United States v. One 1972 Mark II*, 505 F.2d 1162, 1165 (8th Cir. 1974); *United States v. One 1958 Pontiac Coupe*, 298 F.2d 421, 423 (7th Cir. 1962); *United States v. One 1961 Cadillac*, 337 F.2d 730 (6th Cir. 1964); *United States v. Kemp*, 186 F.2d 808 (10th Cir. 1951). The court, however, correctly points out that the Ninth Circuit has not spoken on this matter.

Second, the court in *Mercury Cougar* says that there is no violation of due process in forfeiting the property of an "innocent" owner, but then says it can grant remission if the owner's constitutional claims are meritorious. The court neglects to explain this inconsistency in its logic. How can a due process claim be meritorious when there is no violation of due process?

Third, assuming *arguendo* that an automobile forfeiture proceeding is equivalent to an eminent domain proceeding, just compensation would allow the government to "take" the automobile, but require the government to pay the owner the value of the car. It would not require the return of the car to the owner.

*One 1974 Mercury Cougar XR 7* seems an understandable attempt to prevent a hardship upon a truly "innocent" owner.

**13.** 19 U.S.C. § 1618 provides that

[w]henever any person interested in any vessel, vehicle, merchandise, or baggage seized under the provisions of this chapter, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder files with the Secretary of the Treasury . . . before the sale of such vessel, vehicle, merchandise, or baggage a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto. . . .

26 U.S.C. § 7327 provides that

[t]he provisions of law applicable to the remission or mitigation by the Secretary or his delegate of forfeitures under the custom laws shall apply to forfeitures incurred or alleged to have been incurred under the internal revenue laws.

26 U.S.C. § 7327 makes 19 U.S.C. § 1618 applicable to this and other related cases.

sion or mitigation. This decision does not preclude it from seeking such relief.

3. *Notice*

National Amusement, Inc. argues that it was denied due process because it did not have notice of the non-payment of the special tax or the seizure of the pinball machines. It is, however, only through these forfeiture proceedings that National Amusement, Inc. can be permanently deprived of its property. National Amusement, Inc. did have notice of these proceedings.

In *Calero-Toledo*, the Court did say that

> [t]his is not to say, however, that the "broad sweep" of forfeiture statutes remarked in *Coin & Currency* could not, in other circumstances, give rise to serious constitutional questions. Mr. Chief Justice Marshall intimated as much over a century and a half ago in observing that a "forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed." *Peisch v. Ware*, 4 Cranch 347, 363, 2 L.Ed. 643 (1808).

416 U.S. at 688–89, 94 S.Ct. at 2094.

In a 26 U.S.C. § 7302 proceeding, the owner of the property can file a claim for the property and can petition for remission or mitigation pursuant to 19 U.S.C. § 1618. Thus, the owner has an opportunity to prevent the forfeiture and Chief Justice Marshall's concern is allayed.

C. *Appurtenances*

The remote control device in Civil No. 74–249 was used to operate the four defendant pinball machines there in violation of 26 U.S.C. § 4901(a). U.S. coin in the amounts of $325.00 and $100.85 was used to operate the machines in Civil No. 74–250 and Civil No. 74–252, respectively. Since, the remote control device and the U.S. coin were used to violate 26 U.S.C. § 4901(a), they also are subject to forfeiture under 26 U.S.C. § 7302. *United States v. Amore*, 335 F.2d 329, 330 (7th Cir. 1964).

III. CONCLUSION

In light of the foregoing, the court concludes that

1. The 15 pinball machines are the instrumentalities of the crime and 26 U.S.C. § 7302 is applicable to the 15 pinball machines in question here.

2. 26 U.S.C. § 7302 is applicable to an "innocent" owner of the property subject to forfeiture.

3. Forfeiture of the 15 pinball machines does not violate the due process clause of the Fifth Amendment.

4. The remote control device and the U.S. coin are subject to forfeiture.

Therefore, IT IS HEREBY ORDERED that the 15 pinball machines, the remote control device, and the U.S. coin be forfeited.